IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROBERT DECKER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 14-428 |
| ) | United States Magistrate Judge |
| CAROLYN W. COLVIN, ) | Cynthia Reed Eddy[1] |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

**I.     Introduction**

Plaintiff Robert Decker ("Decker") brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for disability insurance benefits ("DIB") under Title II of the Social Security Act ("Act"). *See* 42 U.S.C §§ 401-434. Each party has submitted cross motions for summary judgment, (ECF Nos. 8 and 10), and the record has been fully developed at the administrative proceedings. For the reasons which follow, Decker's Motion for Summary Judgment, (ECF No. 8), will be granted, and the Commissioner's Motion for Summary Judgment, (ECF No. 10), will be denied. The decision of the Commissioner is vacated, and the matter remanded to the Commissioner for further proceedings in accordance with this Memorandum Opinion.

---

[1]     By consent of the parties, (ECF Nos. 12 and 13), and pursuant to the Federal Magistrate Judges Act, 28 U.S.C. § 636(c), the undersigned has full "authority over dispositive motions…and entry of final judgment, all without district court review." *Roell v. Withrow*, 538 U.S. 580, 585 (2003); *In re Search of Scranton Hous. Auth.*, 487 F.Supp.2d 530, 535 (M.D. Pa. 2007).

## II. Procedural History

Decker protectively filed for DIB on August 16, 2011, alleging onset of disability on November 1, 2009. (R. at 175-181).[2] The applications were denied by the state agency on April 11, 2012. (R. at 135-39). Decker responded on May 25, 2012, by filing a timely request for an administrative hearing. (R. at 140). On April 8, 2013, an administrative hearing was held in Johnstown, Pennsylvania before Administrative Law Judge ("ALJ") Paula Wordsworth. (R. at 34-69). Decker, who was represented by counsel, appeared and testified. *Id.* Additionally, an impartial vocational expert, Linda L. Dezack, testified at the hearing. *Id.*

In her decision dated April 25, 2013, the ALJ determined that Decker was not "disabled" within the meaning of the Act since Decker's alleged onset of disability, so his claims for disability benefits were denied. (R. at 14-33). The Appeals Counsel denied Decker's request for review on February 1, 2014, thereby making the ALJ's decision the final decision of the Commissioner in this case. (R. at 1-4).

Decker commenced the present action on April 4, 2014, seeking judicial review of the Commissioner's decision. (ECF No. 3). Decker and the Commissioner filed cross motions for summary judgment on August 28, 2014 and September 29, 2014, respectively. (ECF Nos. 8, 10). These motions are fully briefed and ripe for disposition.

## III. Statement of Facts

### A. Background

Decker was born on December 7, 1960, and was 52 years old at the time of the administrative hearing. (R. at 195). He completed high school, (R. at 41), and subsequently worked as a shipping clerk, groundskeeper, building repairman, wastewater treatment trainer/sales person, and home remodeler. (R. at 81-83). From November 2009 to September

---

[2] Citations to the Record, contained at ECF Nos. 7-2 – 7-25, *hereinafter,* "(R. at __)."

2

2011, Decker ran his own light construction company. (*Id.*). Thereafter, Decker's sole gainful activity has consisted of cutting grass with a riding lawnmower for an elderly neighbor once per month, at a rate of $30 per occasion. (R. at 39-40).

### B. Medical History

Following an accident in 1984 in which he fell over twenty feet from a tree while trimming it, landing on his hands and knees, (R. at 42, 824), Decker has suffered from multiple resulting physical difficulties, including problems with his knees, arms, and back, and headaches. (R. at 42-46). Additionally, Decker has been diagnosed as having gastroesophageal reflux disease ("GERD") since at least 2006. (R. at 379). However, because Decker does not raise any issues as to the ALJ's findings regarding his physical impairments, his treatment of the same is irrelevant to this appeal.

Decker also has a history of treatment for depression and anxiety. Decker apparently treated with a psychiatrist approximately three years after his accident because he was "extremely depressed" due to his injuries and chronic pain issues. (R. at 541). However, the record does not contain any medical records from these sessions.

On January 26, 2005, Decker was diagnosed with a "depressive disorder", by his primary care physician, Dr. Andrew Cash. (R. at 283). Dr. Cash initially prescribed Lexapro to treat Decker's depression in April of 2006, (R. at 369), which he then switched to Wellbutrin later that year, (R. at 363). Dr. Cash also prescribed Tranxene in late 2006 for Decker's anxiety (R. at 47, 353). Dr. Cash was solely responsible for the treatment of Decker's depression and anxiety until August 14, 2012, when Dr. Cash referred Decker to a psychiatrist, Dr. Richard Cassone for a psychiatric evaluation. (R. at 540, 633).

3

Dr. Cassone diagnosed Decker with "Major depression in partial remission," "Generalized anxiety disorder," and "Adjustment disorder with depression and anxiety," referring Decker for psychotherapy in addition to continued psychiatric treatment by Dr. Cash. (R. at 542). The record shows that Decker then consistently engaged in psychotherapy with Kathleen Stancombe, a licensed clinical social worker, from September 18, 2012, through August 8, 2013. (R. at 745-75). During this period, on January 15, 2013, Dr. Matthew Klain took over for Dr. Cash as Decker's primary care physician and assumed responsibility for the psychiatric treatment of Decker's depression and anxiety. (R. at 620).

## IV. Administrative Decision

On April 25, 2013, the ALJ issued a written decision, finding that Decker had not been under a disability within the meaning of the Act since his alleged onset of disability, November 1, 2009. (R. at 29-30). The ALJ found that Decker had not engaged in substantial gainful activity since his alleged onset of disability and concluded that Decker had the following severe impairments: fibromyalgia, fatigue, history of a right knee replacement, GERD, carpal tunnel syndrome, depression, and anxiety disorder. (R. at 19). The ALJ found that Decker did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listings"). (R. at 19-20).

> The ALJ concluded that Decker has the residual functional capacity ("RFC") to
>
> perform light work as defined in 20 CFR 404.1567(b) except the claimant is limited to unskilled work with occasional climbing stairs and ramps; could not climb ropes, ladders and scaffolds; could occasionally bend, balance, crouch, and stoop; could not kneel and crawl; must avoid concentrated exposure to extreme temperatures, humidity, wetness, vibrations, pulmonary irritants and workplace hazards; requires the opportunity to alternate between sitting and standing every 2 hours with standing and walking a total of 4 hours in an 8-hour workday; could frequently handle and reach in all directions with the left upper extremity; could

occasionally push and pull with the bilateral lower extremities and could not use foot pedals with the bilateral lower extremities; and requires the use of a cane for walking.

(R. at 22).

The ALJ determined that while Decker could not perform any past relevant work, based upon testimony from Dezack, Decker could perform jobs that existed in significant numbers in the national economy. (R. at 28-29). Accordingly, the ALJ found that Decker was not disabled within the meaning of the Act. (R. at 29-30).

## V. Standard of Review

To be eligible for Social Security benefits under the Act, a claimant must demonstrate to the Commissioner that he cannot engage in substantial gainful activity because of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); *Brewster v. Heckler*, 786 F.2d 581, 583 (3d Cir. 1986). When reviewing a claim, the Commissioner must utilize a five-step sequential analysis to evaluate whether a claimant has met the requirements for disability. 20 C.F.R. §§ 404.1520, 416.920.

The Commissioner must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or a combination of impairments that is severe; (3) whether the medical evidence of the claimant's impairment or combination of impairments meets or equals the criteria set forth in the Listings; (4) whether the claimant's impairments prevent him from performing his past relevant work; and (5) if the claimant is capable of performing his past relevant work, whether he can perform any other work which exists in the national economy. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003). If the claimant is found to be unable to resume

previous employment, the burden shifts to the Commissioner at Step 5 to prove that, given claimant's mental or physical limitations, age, education, and work experience, he is able to perform substantial gainful activity in jobs in the national economy. *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986).

Judicial review of the Commissioner's final decisions on disability claims is provided by statute, and is plenary as to all legal issues. 42 U.S.C. §§ 405(g), 1383(c)(3); *Shaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999). Section 405(g) permits a district court to review the transcripts and records upon which a determination of the Commissioner is based; the court will review the record as a whole. *See* 5 U.S.C. § 706. The District Court must then determine whether substantial evidence exists in the record to support the Commissioner's findings of fact. *Burns v. Barnhart*, 312 F.3d 113, 118 (3d Cir. 2002).

Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate" to support a conclusion. *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). If the Commissioner's findings of fact are supported by substantial evidence, they are conclusive. 42 U.S.C. § 405(g); *Richardson*, 402 U.S. at 390. A District Court cannot conduct a *de novo* review of the Commissioner's decision in reference to the grounds invoked by the Commissioner when the decision was rendered. *Palmer v. Apfel*, 995 F.Supp. 549, 552 (E.D. Pa. 1998); *S.E.C. v. Chenery Corp.*, 332 U.S. 194, 196-97 (1947). The court will not affirm a determination by substituting what it considers to be a proper basis. *Chenery*, 332 U.S. at 196-197. Further, "even where this court acting *de novo* might have reached a different conclusion . . . so long as the agency's fact finding is supported by substantial evidence, reviewing courts lack power to reverse either those findings or the reasonable regulatory

interpretations that an agency manifests in the course of making such findings." *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-1091 (3d Cir. 1986).

## VI. Discussion

In support of his Motion for Summary Judgment, (ECF No. 8), Decker argues that the ALJ erred by: "finding 'moderate' impairment in social functioning in [her] paragraph B findings, yet [her] RFC finding has no limitations on dealing with co-workers, supervisors, or the general public." Pl.'s Br. (ECF No. 9), at 5. Accordingly, Decker contends that the vocational expert's subsequent testimony based on this allegedly insufficient RFC "cannot be regarded as substantial evidence." *Id.* at 8. The Commissioner counters that a finding of "moderate" impairment by the ALJ at step three of the five-step process does not necessitate that a corresponding limitation be incorporated into the RFC. Def.'s Br. (ECF No. 17), at 7-8. The Commissioner further asserts that "the ALJ's conclusion that no other social functioning limitations warranted inclusion in the RFC finding was amply supported by the record." *Id.* at 9-12. Finally, the Commissioner argues that "even if the ALJ had been required to include specific limitations in the RFC, any such error was harmless." *Id.* at 13.

"The ALJ must accurately convey to the vocational expert all of a claimant's *credibly established limitations*." *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005) (emphasis in original). To adequately convey such limitations, the ALJ must incorporate each of them into a hypothetical question with "great specificity." *Ramirez v. Barnhart*, 372 F.3d 546, 554-55 (3d Cir. 2004). The ALJ's failure to do so renders the question "deficient and the expert's answer to it cannot be considered substantial evidence." *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987).

At the outset, the Court notes that according to the Listings, social functioning deals with a claimant's "capacity to interact independently, appropriately, effectively, and on a sustained basis with other individuals." 20 C.F.R. § Pt. 404, Subpt. P, App. 1. In *Valansky v. Colvin*, 2014 WL 469893, *2 (W.D. Pa. Feb. 6, 2014), the ALJ found the claimant to have both "moderate limitations in his social functioning" and a "moderate impairment with concentration, persistence, and pace." After reviewing the record, the court determined that the ALJ failed to account for either of these restrictions with the hypothetical posed to the vocational expert. Finding that the resulting hypothetical was therefore inadequate, the court remanded, recognizing "the possibility that the ALJ had an appropriate reason for excluding these limitations from the hypothetical and RFC." *Id.* at *2 n.2.

Similarly, in *Seagraves v. Colvin*, 2014 WL 657549, *1-2 (W.D. Pa. Feb. 20, 2014), the ALJ found the claimant to have "moderate" limitations in social functioning, but then failed to incorporate those limitations into the RFC. In response to a hypothetical question which mirrored the RFC in this case, the vocational expert identified jobs existing in the national economy that such an individual could perform. *Id.* When the ALJ then amended the hypothetical to include anger outbursts, the vocational expert explained that no jobs would exist for such an individual. *Id.* Despite this response, the ALJ determined the claimant was not disabled. *Id.* The court remanded to allow the ALJ to either "clarify his reasoning" for excluding social functioning limitations or "obtain VE testimony in response to a complete and accurate hypothetical," again noting that some unexplained rationale could have justified the ALJ's actions. *Id.*

Other courts in the Third Circuit have found that remand is the appropriate remedy under very comparable circumstances; that is, when the ALJ makes findings of moderate limitations that are supported by the record but fails to include such limitations in the hypothetical question.

8

In *Debias v. Astrue*, 2012 WL 2120451, *4 (E.D. Pa. June 12, 2012), after finding the claimant to have "a moderate impairment in social functioning," the ALJ then posed a hypothetical to the vocational expert which "only provided the limitation that the [the claimant] be given 'no detailed instructions' in his job." The court held that this "hypothetical did not accurately convey all of the claimant's mental impairments with specificity," and remanded. *Id.* Likewise, in *Boyle v. Colvin*, 2014 WL 3556507, *10-*12 (D.N.J Jul. 18, 2014), the court remanded after finding that a hypothetical which included only the limitation that the individual could only perform "one-to two-step tasks" did not adequately convey to the vocational expert the claimant's moderate difficulties with concentration, persistence, or pace, found by the ALJ during step three.

Here, in step three of the sequential analysis, the ALJ found that "[i]n social functioning, [Decker] has moderate restriction." (R. at 20). This conclusion was repeated after a summary of the evidence considered by the ALJ in evaluating the Paragraph B and C criteria under Listings 12.04 and 12.06. (R. at 21). However, neither the hypotheticals posed by the ALJ to the vocational expert, (R. at 63-66), nor the RFC that was ultimately adopted by the ALJ, (R. at 22), accounted for Decker's difficulties with social functioning in any way. Aside from a single subsequent statement relating to the creation of the RFC, which inaccurately stated that she found that Decker had "*mild* difficulties with social functioning," (R. at 27) (emphasis added), the ALJ did not discuss, or even allude to, any intentional decision to exclude these difficulties from the RFC. Standing alone, this later pronouncement that Decker had only "mild" difficulties at step three cannot effectively establish the ALJ's intent to exclude Decker's social functioning impairments, because even "impairments that are not severe" are to be considered in assessing a claimant's RFC. 20 C.F.R. § 416.945(2); s*ee also Ramirez,* 372 F.3d at 554-55; *cf. Clayton v.*

*Colvin*, 2014 WL 5439796, *9 (W.D. Pa. Oct. 24, 2014) (finding that the ALJ did not error by omitting Plaintiff's moderate limitation in social functioning in the hypothetical question because "[t]he ALJ *explained this omission* by noting that, despite his impairment, Plaintiff was able to take college classes, use public transportation, and visit with relatives on a weekly basis." (emphasis added)).

The Court acknowledges that there is evidence in the record which could warrant a determination by the ALJ that Plaintiff's moderate limitations in social functioning did not affect his RFC, as Defendant urges. *See* Def.'s Br. (ECF No. 17), at 10. For example, at step three of sequential evaluation process, the ALJ specifically pointed to Decker's ability "to go outside alone, spend time with others, attend church, go places without accompaniment, attend his boys' sporting events, get along with most people, and get along with authority figures." (R. at 20 (citing R. at 34-69, 218-28)). Additionally, the state psychological consultant examiner, Monica Yeater, whose opinion was generally given great weight by the ALJ, found Decker to have only "mild" difficulties in maintaining social functioning. (R. at 21, 26, 128). Decker also denied depression and anxiety several times throughout Dr. Cash's treatment records, (R. at 302, 322, 339, 343), and Dr. Cassone reported a belief that Decker would not qualify for DIB based solely on his psychiatric issues.³ (R. at 542). However, as described below, there is other evidence in the record supporting Decker's contention that he has moderate limitations in social functioning which should have been conveyed to the vocational expert. Thus, the ALJ's failure to explain her decision to omit said limitations from the hypothetical and the RFC assessment constituted error. Indeed, a court can only affirm an administrative decision on "the basis upon which it purports to rest." *Chenery*, 332 U.S. at 196.

---

³ Of course, the ALJ – and not any other medical source – is *solely* responsible for determining whether a claimant is disabled. 20 C.F.R. § 404.1527(d)(1).

10

Decker's own testimony at the administrative hearing supports his argument that his moderate limitations in social functioning should have been included in the hypothetical. Decker stated that he has "a hard time dealing with people." (R. at 48). He also testified that situations in which he is among four or five other people make him uncomfortable. (*Id.*). The ALJ acknowledged this testimony in finding that Decker had a moderate restriction in social functioning, (R. at 20), however, did not question the vocational expert regarding the same moderate restriction. Further, although GAF scores are not dispositive of a disability finding, the ALJ noted that the GAF score of 55 contained in Dr. Cassone's records is consistent with "moderate difficulties in social or occupational functioning," (R. at 25), and that the GAF score of 50 indicates "a serious impairment in social or occupational functioning." (R. at 27).

Moreover, as noted *supra*, the ALJ's decision contains an internal discrepancy regarding the step three findings pertaining to social functioning restrictions. At step three, the ALJ found that Decker had a *moderate* restriction with social functioning, (R. at 20); however, later in her decision in the section discussing Decker's RFC, the ALJ stated that she had found *mild* difficulties with social functioning at step three, (R. at 27). Such an inconsistency further makes the ALJ's decision to omit this restriction from the hypothetical unclear.

Consequently, based on the foregoing, the hypothetical posed to the vocational expert was inadequate, and the vocational expert's response was therefore not supported by substantial evidence. Contrary to the Commissioner's assertion, such an error was not harmless. *See Brown v. Astrue*, 649 F.3d 193, 195 (3d Cir. 2011) ("An error is 'harmless' when, despite the technical correctness of an appellant's legal contention, there is also no set of facts upon which the appellant could recover."). In the assessment of Decker's RFC, the only included accommodation not exclusively related to Decker's physical limitations was a restriction to

11

"unskilled work." (R. at 22, 63). Although "the primary work functions in the bulk of unskilled work relate to working with things (rather than with data or people)," 20 C.F.R. § Pt. 404, Subpt. P, App. 2, the vocational expert responded that the hypothetical individual could work as either a furniture rental clerk or a ticket seller, (R. at 65), both of which require "significant" interaction with people according to the Dictionary of Occupational Titles, DICOT 295.357-018, 211.467-030. Accordingly, said error was not harmless, and the vocational expert's testimony was not supported by substantial evidence in light of the incomplete hypothetical. On remand, the ALJ must either expressly provide a basis for excluding Decker's "moderate" limitations in social functioning from the RFC assessment and hypothetical, or obtain testimony from a VE in response to a complete hypothetical question which includes Decker's social functioning restrictions.

## VII. Conclusion

Based on the foregoing, Decker's Motion for Summary Judgment, (ECF No. 8), will be granted and the Commissioner's Motion for Summary Judgment, (ECF No. 10), will be denied. The decision of the Commissioner is vacated, and the matter remanded to allow the ALJ an opportunity to either explain her decision to exclude Decker's "moderate" limitations in social functioning from the RFC assessment and the hypothetical, or obtain testimony from a vocational expert in response to a complete hypothetical question which incorporates Decker's social functioning restrictions. An appropriate Order follows.

January 7, 2015.

By the Court:

s/ Cynthia Reed Eddy
Cynthia Reed Eddy
United States Magistrate Judge

cc: all registered counsel via CM-ECF

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBERT DECKER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 14-428 |
| | ) | United States Magistrate Judge |
| CAROLYN W. COLVIN, | ) | Cynthia Reed Eddy |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER**

AND NOW**,** this 7th day of January, 2015, after the Plaintiff, Robert Decker, filed an action in the above-captioned case, and after Motions for Summary Judgment (ECF Nos. 8 and 10) were filed by the parties,

IT IS HEREBY ORDERED that the Motion for Summary Judgment filed by Plaintiff (ECF No. 8) is GRANTED;

IT IS FURTHER ORDERED that Defendant's Motion for Summary Judgment (ECF No. 10) is DENIED.

IT IS FURTHER ORDERED that the decision of the Commissioner of Social Security is VACATED, and the case REMANDED, pursuant to the fourth sentence of 42 U.S.C. § 405(g), for further proceedings not inconsistent with the Court's Memorandum Opinion.

By the Court:

s/ Cynthia Reed Eddy
Cynthia Reed Eddy
United States Magistrate Judge

cc: all registered counsel via CM-ECF